United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE BEAN,<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>         Defendant. | Case No.  24-cv-07744-WHO<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 10, 12 |

Rose Bean ("Claimant") challenges an unfavorable determination by an Administrative Law Judge ("ALJ") denying her social security disability insurance ("SSDI") benefits for the period November 1, 1998 – her alleged onset of disability – through December 31, 2001 – the date she was last insured.  She argues that the ALJ failed to properly analyze her subjective symptom testimony, improperly used activities of daily living to attack her credibility, and that the Appeals Council improperly neglected significant post-hearing evidence.  Plaintiff's Brief in Support of Remand ("Pl. Br."), Dkt. No. 10-1.  Bean moves to remand this matter back to the Social Security Administration for further proceedings, pursuant to 42 U.S.C. § 405(g).  Defendant Commissioner of Social Security ("Commissioner") responds that the ALJ reasonably discounted Bean's symptom allegations due to inconsistencies in the record and her testimony.  Commissioner's Brief ("Comm. Br.") [Dkt. No. 12] at 3-7.  The Commissioner further contends that the Appeals Council appropriately determined that the there was no "reasonable probability" that the post-hearing evidence would have changed the outcome of the case. Comm. Br. 7-9.

The ALJ did not make the necessary specific findings to justify his unfavorable decision using clear and convincing evidence, and this error was not harmless.  Moreover, there is a reasonable probability that the evidence Bean submitted to the Appeals Counsel would have

resulted in a different conclusion had the ALJ considered it.  As a result, I REMAND this matter for further administrative proceedings.

**BACKGROUND**

**I.      PROCEDURAL BACKGROUND**

Bean filed for supplemental security income ("SSI") and SSDI benefits in May of 2004, alleging disability onset of November 1, 1998.  AR 148-153.  She alleges that she was "determined medically disabled" for SSI retroactive to 2004.  AR 148.  She asserts that she did not receive a response from the SSA regarding her SSDI application.  *Id*.  SSA records indicate that Bean was granted SSI benefits on November 5, 2004, and her request for SSDI was denied on November 12, 2004.  AR 295.

Bean reapplied for SSDI benefits on July 31, 2017.  AR 446-452; *see also* AR 148 (identifying the administrative errors that led to Claimant reapplying for SSDI).  The SSA admitted that Bean's prior claim files were destroyed.  AR 295.[1]  The SSDI claim was denied first on December 14, 2017, AR 309-13, and on reconsideration on May 16, 2018.  AR 318-22.  The SSA repeatedly determined that Bean's claim failed because "[t]he evidence in the file is not sufficient to fully evaluate your claim and the evidence needed cannot be obtained."  AR 318; *see also* AR 309-310.  Bean filed a written request for a hearing, which after delays requested by Bean to accommodate her cancer treatment and transfer of the location of the hearing, took place on July 6, 2023, via telephone.  AR 382-93; *see also* AR 375, 377.  The ALJ issued an unfavorable decision on September 19, 2023, determining that Bean was not disabled between November 1998 and December 2001.  AR 83-97.

Bean sought review by the Appeals Council and submitted additional evidence in support

---

[1]  In his decision, the ALJ noted "the claimant's assertions that records no longer exist because they are from so long ago. It is the claimant's burden, however, and I cannot find disability where the claimant did not save records and did not further appeal her prior application."  AR 90. Bean asserts that after she applied for both SSDI and SSI in 2004, the SSA did not "process" her SSDI application, she never received a denial letter regarding her SSDI application, and now the SSA has destroyed the records she submitted in 2004.  AR 148.  It is unclear in the record and neither party addresses why the SSA decided to reopen or reprocess Bean's claim that she is entitled to SSDI benefits for disability between 1998 and 2001.  But it is clear that the records from 2004 have been destroyed.  In an October 4, 2017, Disability Report from an SSA field office, the "Location" of Bean's prior folder is marked as "DESTROYED."  AR 484-85.

2

of her claim.   AR 1-79.  The Appeals Council "determined that the Administrative Law Judge did not abuse his or her discretion and none of the other reasons in our rules existed to review your case."  AR 2.  The Appeals Council admitted receiving "evidence that you show is new, material, and relates to the period on or before the date of the hearing decision," but concluded that new evidence[2] did "not show a reasonable probability that it would change the outcome of the" ALJ's decision.  *Id*.  The Appeals Council also explained that some of Bean's further additional evidence[3] concerned a period beyond December 2001, and therefore would "not affect the decision about whether you were disabled beginning on or before December 31, 2001."  *Id*.

This appeal followed.

## II.   ALJ DECISION

The ALJ found that Bean did not qualify for SSDI during the period at issue.  AR 84, 95. The ALJ acknowledged the many opinions in the record substantiating Bean's complaints of disabling back pain and mental health conditions between 1998 and 2001 that, in Bean's treating sources' opinions, imposed serious disabling limitations on Bean.  AR 90-95.  However, he generally discredited those opinions because they were "inconsistent" with evidence in the record of Bean taking care of six children (including two special needs children), driving, and ice skating during the period at issue.  *See* AR 92-95.[4]  The ALJ also discounted Bean's subjective complaints

---

[2] "[Letters] from Victoria Davis, M.D. dated April 10, 2024 (4 pages), Constance Valentine, M.S. dated June 14, 2024 (2 pages), Alice Petty-Hannum, MFT dated July 1, 2024 (4 pages), Barbara Sinclair, M.D., F.P., O.B. dated July 8, 2024 (7 pages), Jeanne Adams dated July 22, 2024 (1 page), and Barbara Murphy, Psy.D. undated (3 pages) related to your impairments between 1998 – 2001 in addition to treatment notes from Dr. Sinclair dated December 19, 1997 through July 24, 2001 (64 pages) and a functional capacity form filled out by Dr. Sinclair on June 1, 2023 applicable to 1997-2001 (5 pages)."  AR 2.

[3] "[F]unctional capacity forms from Constance Valentine, M.S. dated October 5, 2004 (9 pages) and Arianne Advocate, MPT dated April 28, 2023 (5 pages)."  AR 2.

[4] In response to past medical records from Dr. Sinclair from 1998-1999 demonstrating musculoskeletal pain and PTSD, the ALJ stated that "[t]he purported inability to work since 1998 [is] not consistent with evidence such as driving, child rearing, and ice skating."  AR 91-92. The ALJ found that the disability evaluation reported by Shari L. Kovner, FNP, that stated Bean was unable to work, "is not consistent with the evidence of activities, such as driving, child rearing, and ice skating."  AR 92.  Addressing the April 3, 2023, assessment from Dr. Davis, Bean's physician for over two decades, that found Bean was incapable of working even low stress jobs, the ALJ found those conclusions inconsistent with the "limited medical evidence we have for the relevant period," and Bean's "ability to take care of her six children."  AR 92-94.  The ALJ

3

United States District Court
Northern District of California

and the opinions of her medical sources because they were not supported by "the limited medical evidence we have for the relevant period." AR 86, 90-95.  The ALJ repeatedly asserted that it was Bean's burden to provide records that corroborated her testimony and the opinions of her treating sources, but those records were missing.  AR 86, 92-95.

The ALJ found that Bean last met the Social Security Act's insured status requirements on December 31, 2001, and did not engage in substantial gainful activity after her alleged onset date of November 1, 1998.  AR 86.  The ALJ found that Bean had severe impairments because of her somatic dysfunction and chronic pain.  AR 86; 20 CFR § 404.1520(c).  However, the ALJ found Bean's major depressive disorder and PTSD to be non-severe, and that Bean was able to manage her symptoms such that parenting, home responsibilities and caring for two special needs children could be completed.  AR 86.

The ALJ found that Bean had the residual functional capacity to perform light work through the date last insured, as defined in 20 CFR § 404.1567(b).  AR 87.  The ALJ determined that she could sit for six hours totally in an eight-hour day, "for one hour at a time and occasionally bend her neck forward," and that she could stand and walk for six hours total in an eight-hour day.  AR 87.

## LEGAL STANDARD

Courts "may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless," meaning that "it is inconsequential to the ultimate nondisability determination, or [that] the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."

also found the assessments from Arianne Advocate, LMFT, "not consistent with the claimant's ability to take care of children."  AR 93. The ALJ detailed Dr. Jason Pope's physical examination of Bean and wrote "the purported limitations are not reflected in the medical evidence."  AR 93. The ALJ found that Dr. Murphy's diagnosis of PTSD was "not consistent with the limited medical evidence." AR 93-94. Sandy McCabe's letter explaining the circumstances of the period of question and Bean's life-threatening anorexia nervosa was also found to be "not consistent with the limited medical evidence."  AR 95.

4

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation modified).

When considering whether substantial evidence supports the ALJ's decision, courts "review the administrative record in its entire[ty] . . ., weighing evidence that supports and evidence that detracts from the ALJ's determination," *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992), and "leav[ing] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record," *Treichler*, 775 F.3d at 1098. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Drouin*, 966 F.2d at 1257 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Id*. at 1258.

Courts may not "affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally." *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

**DISCUSSION**

**I.    SUBJECTIVE TESTIMONY**

In general, an ALJ cannot reject a claimant's subjective testimony without specific findings supported by "clear and convincing" evidence. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). Bean argues that the ALJ failed to appropriately discredit her subjective testimony about her impairments and their impact on her life, because the ALJ failed to first identify specific subjective testimony about Bean's limitations during 1998 through 2001, and second, then failed to link specific subjective testimony that he did not find credible to identified evidence in the record contradicting Bean's testimony as required by *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) and *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Pl. Br. 3-6.

In discussing the ALJ's evaluation of subjective testimony, the Ninth Circuit in *Brown-Hunter* found that the ALJ failed to appropriately discredit subjective testimony "[b]ecause the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination." 806 F.3d at 494. In

United States District Court
Northern District of California

5

*Lambert*, while ALJ provided a "relatively detailed overview" of medical history, the ALJ provided only "non-specific conclusions that [claimant's] testimony was inconsistent with her medical treatment," which the Ninth Circuit found insufficient because it failed to provide adequately reviewable "reasons" to find claimant's testimony not credible. *Lambert*, 980 F.3d at 1277–78.

Bean contends that the ALJ here similarly and improperly evaluated the credibility of her testimony by providing "boilerplate statement[s]" instead of clear and convincing reasoning concerning why she did not qualify for SSDI from 1998 to 2001. Pl. Br. 4 (*quoting Lambert*, 980 F.3d at 1277). She asserts that instead of summarizing her testimony about her impairments and limitations between 1998 and 2001 and explaining how it was not credible, the ALJ made only short, generalized statements and then went through the medical record without explaining what in the record undermined plaintiff's testimony about the nature of her impairments. Pl. Br. 5, 7. Similar to *Lambert*, where ALJ wrote the single statement "claimant's statements … are not credible to the extent they are inconsistent with the above residual functional capacity assessment" the ALJ did the same thing here, writing several times that "the purported limitations are not reflected in the medical evidence and not supported by any treatment records" after summarizing medical assessments from Bean's doctors. Pl. Br. 7; AR 80-97.[5]

In response, the Commissioner argues that the ALJ reasonably discounted Bean's subjective testimony because his findings were "sufficiently specific" and there existed "substantial evidence" to support his decision. Comm. Br. 3. The Commissioner does not identify particular subjective testimony from Bean that the ALJ discredited. Instead, the Commissioner points out that the ALJ addressed medical evidence regarding Bean's physical pain and mental health impairments, but determined that neither supported Bean's position that she was unable to work. *Id*. 3-7. The Commissioner argues that by working through the medical evidence and evidence of Bean's life activities, the ALJ appropriately rejected Bean's testimony during the ALJ

---

[5] In *Lambert*, the ALJ stated multiple times that the claimant's subjective pain testimony was not consistent with "objective medical" evidence. *Lambert*, 980 F.3d at 1277. The Ninth Circuit held that such a statement was cursory and did not identify which parts of the testimony were not credible with specificity. *Id.*

6

United States District Court
Northern District of California

hearing that she was disabled as a result of neck and back pain, depression, and anxiety. *Id*. at 5-6. Any alleged failure by the ALJ to identify more specifically Bean's subjective testimony and link it to specific medical evidence is harmless, according to the Commissioner, because when the ALJ's opinion is considered as a whole the justifications for rejecting Bean's testimony are clear based on the discussion of the medical evidence. *Id*. at 6.

The issue remains, however, that the ALJ did not squarely identify Bean's subjective testimony about her limitations during this period and link that to specific medical evidence to discredit that testimony. The Commissioner's arguments, providing linkage that could be supportive of the ALJ's conclusion, does not help at this juncture. District courts are "constrained to review the reasons the ALJ asserts," and not accept later reasoning submitted by the Commissioner that the ALJ did not discuss. *Brown-Hunter*, 806 F.3d at 492.

## II.    ACTIVITIES OF DAILY LIVING

Bean also argues that the ALJ improperly used sparse evidence of her daily life activities to attack her credibility concerning her limitations in the relevant time period. Pl. Br. 7-9. In the Ninth Circuit, the ALJ must identify "specific, clear, and convincing evidence" to show that a claimant's daily activities were "inconsistent with the alleged severity of her limitations." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Even after making "specific findings" relating to daily life activities, the ALJ must explain "their transferability" to a work setting "to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here the ALJ repeatedly rejected medical opinion evidence regarding Bean's limitations from her physical pain *and* her acknowledged mental health impairments by pointing to evidence that Bean drove a car on a few occasions, went ice skating once, and also "took care" of six children including two with special needs. *See* AR 87, 88, 90, 92, 95.[6] At the hearing, however,

---

[6] As indicated in footnote 4, in discrediting the medical source opinions from Dr. Sinclair that describe Bean's inability to work due to her PTSD, anxiety, anorexia, and musculoskeletal problems, the ALJ wrote "activities, such as driving, child rearing, and ice skating" were "not consistent" with medical records from 1998 and 1999 submitted by Dr. Sinclair. AR 92. In response to an assessment from Dr. Davis dated April 3, 2023, which described Bean's inability to function "in most areas of unskilled work", the ALJ wrote that "[the record] is not consistent with

Bean testified that some of those kids were not with her during this period (in juvenile hall or with another parent), 4 were teenagers, she was unable to do laundry, and she received much help from family and friends with providing food and rides for the kids. AR 267-270; *see also* AR 149-50 (noting that by 2001 most of the children were adults or not in her custody). The ALJ's decision never engaged with this aspect of Bean's testimony and instead relies solely on a 1999 letter from a voluntary bereavement counsellor praising Bean for her ability to "meet challenges and demands of raising six sons." AR 89; AR 483 (stating only "I am continually impressed with Sue's ability to meet the challenges and demands or raising six sons").

The ALJ did not identify specific, clear and convincing evidence to discredit Bean's unaddressed testimony about the difficulties she had taking care of her children during the relevant timeframe or how the few sporadic examples of daily life activities the ALJ identified could be transferable to a work setting or otherwise undermined Bean's credibility.

### III.    POST-HEARING EVIDENCE

Following the ALJ decision, presumably in response to the ALJ's repeated recognition that the medical records regarding 1998 through 2001 were "limited" and faulting Bean for not saving records and not pursuing an appeal from the initial SSDI denial, Bean submitted extensive opinion evidence from medical providers and others covering the period 1998 through 2001 and after.[7] As noted the Appeals Council considered that some of this evidence was material and addressed the appropriate time frame, but concluded that it did not support a "reasonable probability" that if considered by the ALJ the decision would have been different. AR 2.[8]

the claimant's ability to take care of her six children." AR 92.

[7] The evidence included: (1) A letter, dated June 14, 2024, from Constance Valentine, M.S., concerning Bean's PTSD, severe depression, and suicidal thoughts between 1998 through 2001 (AR 231-32); (2) a letter from Alice Petty-Hannum, MFT, dated July 1, 2024, regarding her work with Bean and her PTSD from July 2001 to June 2002 (AR 60); (3) a letter from Jeanne Adams, a victim services advocate who provided crisis support for Rose between 1999 and 2001 (AR 56); (4) a letter and assessment concerning Bean's treatment for anorexia nervosa and PTSD from clinical psychologist Dr. Barbara Murphy, Psy.D (AR 242-44); (5) a detailed RFC report, Chronic Pain RFC Questionnaire, and Treatments notes, all covering the period from December 19, 1997 through July 24, 2001 from Dr. Barbara Sinclair, M.D., F.P., O.B. (AR 154-230); and (6) a letter dated 4/28/2023 from Arianne Advocate, MPT.

[8] The Appeals Council also found two pieces of evidence, including the functional capacity form

8

The parties dispute the correct standard to apply.  The Commissioner notes that applicable regulations since 2017 provide "that the Appeals Council will review a case based on additional evidence submitted to the Council for the first time if the evidence is 'material,' it relates to a time period on or before the ALJ's decision, and 'there is a reasonable probability that the additional evidence would change the outcome of the decision.' 20 C.F.R. § 404.970(a)(5)." *White v. Kijakazi*, 44 F.4th 828, 836 (9th Cir. 2022).  Plaintiff points to established Ninth Circuit caselaw requiring that the claim "demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome" of the disability determination.  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citation and quotation marks omitted).

Courts in the Ninth Circuit have found that the distinction in language between those two standards is not materially significant.  *See, e.g., Vega v. Comm'r of Soc. Sec.*, No. 1:24-CV-00360-JLT-GSA, 2025 WL 1735569, at *6 & n.3 (E.D. Cal. June 23, 2025), *report and recommendation adopted sub nom. Vega v. Bisignano*, No. 1:24-CV-0360 JLT GSA, 2025 WL 1898089 (E.D. Cal. July 9, 2025) ("The regulations use the phrase 'reasonable probability,' [20 C.F.R. § 416.1470] whereas the Ninth Circuit uses the phrase 'reasonable possibility,' [*Mayes*, 276 F.3d at 462] which have somewhat different connotations. Rather than picking one over the other, it may be simpler to state 'could reasonably be expected.'").  Regardless, I find that Bean has shown that consideration of the post-hearing evidence that concerns the period between November 1998 and December 2001 satisfies both standards.

The post-hearing evidence – submitted by Bean's treating providers and a vocational rehabilitee counsellor who knew Bean socially through the relevant time – provides details about Bean's poor functioning during the relevant time period, mostly related to her mental health conditions, including PTSD and depression.  *See* AR 56 (discussing period between 1999 and 2001), 76-77 (discussing inability to work starting by 2001), 154-160 (discussing PTSD and chronic pain between 1998 and 2001), 231-232 (discussing impact of PTSD and dissociative disorder from 1998 through 2001), 242-244 (discussing numerous mental health conditions and

from Valentine, to be immaterial because it addressed the time period after 2001.  AR 2.

United States District Court
Northern District of California

impact on daily life in 2001). The ALJ had repeatedly noted the lack of medical evidence to show that Bean's physical and mental health conditions were disabling. If he had considered the post-hearing evidence, there is a reasonable probability, and reasonable possibility, that it could be expected to have changed the outcome.

## CONCLUSION

This case is REMANDED for further proceedings to allow the full record to be considered, supplemented by the medical opinion and other evidence submitted by Bean to the Appeals Council and the subjective testimony of Bean regarding her daily life functioning during the relevant time period.

**IT IS SO ORDERED.**

Dated: March 30, 2026

William H. Orrick
United States District Judge

10